## Ingram *et al. v.* Ingram.

### *Bill for Divorce and Alimony.*

1. *Foreign decree of Divorce may be collaterally impeached.*—A decree of divorce in one state may be impeached collaterally in the courts of another state, by proof that the court granting the divorce had no jurisdiction, notwithstanding the recitals in the decree, showing jurisdiction.

2. *Jurisdiction of foreign courts; acknowledgment of service, when insufficient to confer.*—An acknowledgment of the service of a suit for divorce, instituted in a foreign state against a resident of this State, is insufficient to confer jurisdiction on such foreign court to grant a decree of divorce against such resident of this State, where such acknowledgment was made in ignorance of its purport, and was procured by deception.

APPEAL from Lamar Chancery Court.
Heard before Hon. W. H. SIMPSON.

W. A. YOUNG, for appellants.

NESMITH & NESMITH, *contra.*

SIMPSON, J.—The bill in this case was filed by Mary J. Ingram, against her husband, M. W. Ingram, and his father and mother, and prayed for a divorce, alimony, custody of their two children, and the subjection of certain lands to her claim, which it is alleged were conveyed by her said husband, on the eve of marriage, in fraud of her marital rights.

9s

[Ingram *et al.* v. Ingram.]

The answer, besides a general denial, sets up the fact that said M. W. Ingram, who resides in Texas, had, before the filing of the bill, obtained in the district court of Henderson county, Texas, a decree dissolving the bonds of matrimony hitherto existing between complainant and the defendant, M. W. Ingram.

The various amendments, demurrers, motion to dismiss and answers, raise the question as to the validity and effect of said decree in Texas, and as to the right of the complainant to maintain a bill for alimony after the rendition of said decree. It was claimed by the defendant that said decree was rendered after jurisdiction of complainant had been obtained by an acknowledgment of service signed by her and filed in said court. The complainant insists that said paper, purporting to be her acknowledgment, was a forgery, and that she never had any notice of said proceeding, until long after the rendition of the decree.

A decree of divorce in one state may be impeached collaterally in the courts of another state, by proof that the court granting the divorce had no jurisdiction, notwithstanding the recitals in the decree showing jurisdiction.—*German Savings Society v. Dormitzer,* 192 U. S. 125; *Kingsbury v. Yniestra, Admr.,* 59 Ala. 320.

There is no pretence that any explanation was made to her as to what the paper was, even by those who claimed she signed it, her name was mis-spelled, and, while there is some conflict in the testimony, yet, from a careful examination of the depositions, we are satisfied that either she did not sign the service at all, or, if she did sign the paper, she was deceived so that she did not understand its purport. Consequently, the Texas court had no jurisdiction to render the decree against her, and the testimony also shows that she had a meritorious defense. The testimony also satisfies this Court of the correctness of the chancellor's decision in regard to the lands mentioned in the decree, and that said lands were bought and paid for by said M. W. Ingram, and that his father and mother participated in the intent to place the title to said

lands in their names for the purpose of defeating the marital rights of the complainant.

There is no allegation in any of the pleading in regard to the supposed marriage of M. W. Ingram to Selia Williams, before his marriage to complainant, and, as the only witness who testified to that places the marriage twelve years before her deposition was taken in 1902, which would make it in 1890, and says that he lived with with her six years and visited her twice afterwards, while the incontestible fact is that he married complainant in 1895, we conclude that there must be some mistake in the identity of the person or otherwise, and the evidence is not sufficient to establish the fact of said previous marriage.

We can see no reason, from the testimony, why the children should be taken away from the mother and placed in the custody of the infirm father and mother of the man who has abandoned them and his wife.

It is the duty of the court to grant the relief prayed, as to the lands.

As the view this Court takes of it is that the divorce decree of the Texas court is a nullity, the chancellor, in addition to the relief which he did grant, should have also granted the prayer for a divorce *a vinculo*.

The decision of the chancellor being correct as far as it goes, the same is not disturbed, but, in order that the chancellor may add to the decree, as it now stands, a further provision granting to the complainant a divorce *a vinculo matrimonii*, the decree is thus far reversed and remanded.